[Civ. No. 7703.   Fourth Dist., Div. Two.   June 3, 1966.]

PALM SPRINGS PAINT COMPANY, Plaintiff and Appellant, v. RICHARD ARENAS et al., Defendants and Respondents.

Arnold & Rosenberg and Thurman Arnold, Jr., for Plaintiff and Appellant.

Thompson & Colegate, F. Gillar Boyd, Jr., and Don Brown for Defendants and Respondents.

TAMURA, J.—Plaintiff, Palm Springs Paint Company, brought this action against defendant Richard Arenas, a member of the Agua Caliente tribe of Mission Indians, and the

Security First National Bank, guardian of his estate, for declaratory relief and breach of an agreement, hereafter referred to as the "side agreement," executed by Arenas contemporaneously with the execution of a five-year lease of restricted Indian land in Palm Springs. Plaintiff appeals from a judgment for defendants.

Plaintiff is a corporation whose stock is wholly owned by Laurie and Edna Sheklow. In September 1955, with the written approval of an authorized agent of the Bureau of Indian Affairs of the United States Department of Interior, defendant Arenas leased to Laurie Sheklow for a five-year term a 50′ x 100′ lot in Palm Springs. Contemporaneously, the parties entered into a written side agreement which was never submitted to nor approved by the Bureau of Indian Affairs and which, while purporting to be between the plaintiff corporation and Arenas, was signed by Laurie Sheklow individually and Arenas.

The introductory recitals of the side agreement refer to the proposed five-year lease, the lessee's reluctance to purchase a building situated on the lot because of the shortness of the term, and the fact that the parties have entered into the agreement in order "to assure the lessor that the lessee will renew said lease upon the expiration thereof and that lessee will continue to improve said land." The agreement thereafter provides for advance payment of the total rent reserved in the five-year lease in consideration of which the lessor agrees that if he fails to grant renewals or extensions to cover a total period of 20 years, or if, after receiving a fee patent, he sells, gives, or devises the land to third persons, he will purchase the building and improvements placed upon the premises by the lessee and, in addition, pay lessee the profits it would have realized had the lease been extended or renewed for the full 20 years. The agreement sets forth a description of the leased premises and a schedule of the annual rent to be paid for subsequent extensions or renewals of the lease over a 20-year period.

The plaintiff purchased and remodeled the existing building, improved the lot, and operated a retail paint store on the premises.

In 1957, defendant Arenas was judicially declared incompetent and the Security First National Bank was appointed guardian of his estate.

In 1958, realtors representing the Sheklows and representatives of the bank discussed a proposed lease of a two-acre

parcel allotted to Arenas which included the 50' x 100' lot. The evidence is conflicting as to whether the discussions centered on the two acres rather than the lot because the bank would not consider renewal of the lot lease or whether the Sheklows never sought its renewal. Negotiations terminated when the Sheklows decided they were unable to finance the two-acre lease.

Upon the expiration of the lease, the bank leased the premises to a third person and plaintiff continued in occupancy on a month-to-month tenancy under the new lessee until July 1962 when it moved to a new location.

Plaintiff brought this action to recover the value of the building and improvements in accordance with the terms of the side agreement or, in the alternative, should the side agreement be declared invalid, recovery on the theory of unjust enrichment. The court found and concluded that the side agreement was in violation of section 5 of the General Allotment Act of 1887 (24 Stat. 388, 25 U.S.C. § 348) and was therefore "absolutely null and void." Judgment was entered denying plaintiff any relief against defendants.

Plaintiff argues that the trial court erred (1) in finding that the side agreement was invalid and (2) assuming the invalidity of the agreement, in denying relief under the unjust enrichment theory.

The parties are in agreement that the premises described in the lease and in the side agreement were subject to the following restrictions contained in section 5 of the General Allotment Act of 1887, *supra*: "And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null *and* void: . . ."

█ A conveyance or lease of restricted lands without approval of the Secretary of the Interior is absolutely void. (*Heckman* v. *United States,* 224 U.S. 413 [32 S.Ct. 424, 56 L.Ed. 820] (Conveyance); *Spector* v. *Pete,* 157 Cal.App.2d 432 [321 P.2d 59] (Contract to Sell); *Stolz* v. *United States,* 99 F.2d 283 (Lease); *United States* v. *Flournoy Livestock & Real Estate Co.,* 69 F. 886 (Lease); *Eagle-Picher Lead Co.* v *Fullerton,* 28 F.2d 472 (Lease Extension).)

█ Plaintiff maintains that the side agreement was merely one for the purchase and sale of personalty—buildings and improvements in which lessee retained ownership—and hence does not "touch" the land within the meaning of the statute.

The agreement, however, is inextricably bound to the lease. The obvious and, indeed, the express purpose of the agreement was to assure successive renewals of the lease for 20 years. The provisions making the lessor liable, in the event of failure to renew, not only for the value of the buildings and improvements but the profits lessee would have realized over the 20-year period, were manifestly designed to make renewals mandatory. An agreement to renew a lease is a covenant which runs with the land (*Penilla* v. *Gerstenkorn,* 86 Cal.App. 668 [261 P. 488]; *Standard Oil Co.* v. *Slye,* 164 Cal. 435 [129 P. 589]) and clearly constitutes a contract ''touching'' the land within the meaning of the statute. ''The terminology adopted by the parties in reaching their agreement did not operate to relieve appellant of the amercement provided by the statute. 'Mere words and ingenuity of contractual expression, whatever their effect between the parties, cannot by description make permissible a course of conduct forbidden by law.' (*United States* v. *City & County of San Francisco,* 310 U.S. 16, 28 [60 S.Ct. 749, 84 L.Ed. 1050].)'' (*Porter* v. *Fiske,* 74 Cal.App.2d 332, 336 [171 P.2d 971]; *De Armas* v. *Dickerman,* 108 Cal.App.2d 548, 552 [239 P.2d 65].)

In *United States* v. *Emmons,* 351 F.2d 603, the Court of Appeals of the 9th Circuit held that an unapproved ''side agreement'' to extend a five-year lease of restricted Indian lands in Palm Springs was void for all purposes.[1] The action was brought by the United States against the lessee and its assignee for ejectment, quiet title, and cancellation of the side agreement. The United States District Court found that the agreement ''touched'' the land and was void against the United States, but, since the allottee was not a party to the action, refused to so determine as between him and defendants. The government appealed on the ground that the judgment should have decreed the agreement invalid as to the allottee notwithstanding his absence as a party because the

---

[1]Although the reported opinion does not disclose the terms of the side agreement involved in *Emmons, supra,* the records of that case of which we take judicial notice and which we have examined for the purpose of determining the precise legal issue decided (Code Civ. Proc., § 1875, subd. 3; *Flores* v. *Arroyo,* 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263]; *Atlantic Fruit Co.* v. *Red Cross Line,* 5 F.2d 218, reversed on other grounds, 264 U.S. 109 [44 S.Ct. 274, 68 L.Ed. 582]; *Matthews* v. *McVay,* 241 Mo.App. 998 [234 S.W.2d 983]), disclose that the side agreement was substantially identical with the one involved in this case. It called for the purchase by the lessor of the improvements placed on the leased premises in the event lessor failed to grant extensions totaling 50 years.

government was suing on his behalf. The Court of Appeals agreed. It held that the "statute makes a holding of absolute nullity mandatory" and remanded the matter directing entry of a judgment adjudging the side agreement "null and void for all purposes."[2]

▮ Apart from our conclusion that the side agreement is void, plaintiff is estopped from asserting its validity by virtue of a prior final judgment of the United States District Court in *United States* v. *Palm Springs Paint Company, et al.,* (Case No. 703-61 W. B., So. Dist. of Cal., Central Div.) adjudging the agreement to be void.

▮ In their respective briefs, both parties have relied upon and directed this court's attention to that case, the findings and judgment being set forth in full in respondents' brief. The record further discloses that respondents had no opportunity to plead the federal judgment or otherwise raise the issue of collateral estoppel in the trial court. In these circumstances, in the interest of justice this court may properly take judicial notice of the records of the federal suit. (Code Civ. Proc. § 1875, subd. 3; *Flores* v. *Arroyo,* 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Sewell* v. *Johnson,* 165 Cal. 762, 768-770 [134 P. 704]; *City of Los Angeles* v. *Abbott,* 217 Cal. 184, 193 [17 P.2d 993]; Witkin, Cal. Evidence (1958) § 48, pp. 63-64.)

▮ The action resulting in the judgment from which this appeal is taken was filed in the superior court in July 1960, and tried on October 8, 9 and 10, 1962. Findings and judgment were entered on October 8, 1963, *nunc pro tunc,* as of April 1, 1963.

The United States filed suit in the federal district court in June 1961 against the Palm Springs Paint Company, Laurie Sheklow, Richard Arenas, and Security First National Bank as guardian of his estate, to quiet title and for cancellation of the side agreement. Findings and judgment in that suit were entered on April 2, 1963, adjudging that the side agreement constituted a contract "touching" the allotted lands and, not having been submitted to the United States for approval, was

---

[2]The court held that the agreement was void under section 5 of the Mission Indian Act of 1891 (26 Stat. 712) rather than section 5 of the General Allotment Act of 1887 [24 Stat. 388, 25 U.S.C. § 348). But since both acts contain identical restrictions on alienation, conveyances or contracts touching allotted lands and are to be construed *in pari materia* (*Kirkwood* v. *Arenas,* 243 F.2d 863; *Bacher* v. *Patencio,* 232 F.Supp. 939), the result would be the same under either act.

"null and void for all purposes and of no force and effect whatsoever."[3]

■ Where there are two separate pending actions involving the same issue and same parties in different courts, it is the first final judgment, even though rendered in the second suit, that renders the issue res judicata in the other suit. (*Domestic & Foreign Petroleum Co., Ltd.* v. *Long,* 4 Cal.2d 547, 562 [51 P.2d 73] ; *Haines* v. *Pigott,* 174 Cal.App.2d 805, 807 [345 P.2d 539] ; Rest., Judgments, § 43.) ■ Although normally the res judicata effect of a prior judgment must be pleaded or evidence thereof presented to the trial court, where a judgment becomes final while an appeal from a judgment in another action presenting the same issue between the same parties is pending, the first final judgment may be brought to the attention of the appellate court in which the appeal is pending and may be there relied upon as res judicata. (*Domestic & Foreign Petroleum Co., Ltd.,* v. *Long, supra; Hart Steel Co.* v. *Railroad Supply Co.,* 244 U.S. 294 [37 S.Ct. 506, 61 L.Ed. 1148] ; *Ruben* v. *City of Los Angeles,* 51 Cal.2d 857, 861 (fn. 1) [337 P.2d 825] ; *Haines* v. *Pigott, supra;* 3 Witkin, Cal. Procedure (1954) p. 1935.) ■ While the plaintiff and defendants herein were named as codefendants in the federal suit and ordinarily estoppel by judgment does not operate as between codefendants (*Truck Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483, 493 [14 Cal.Rptr. 408]), the plaintiff and defendants herein were in fact adverse parties in the federal suit. The interest of the allottee being represented by the United States, the judgment determined the validity of the agreement as between the codefendants. (*United States* v. *Emmons, supra,* 351 F.2d 603.) The presence of the allottee and the guardian of his estate as parties to the federal suit did not add or detract from the effect of the judgment on the issue of the validity of the side agreement as between the allottee and the lessee. (*United States* v. *Emmons, supra; Heckman* v. *United States, supra,* 224 U.S. 413, 445 [32 S.Ct. 424, 56 L.Ed. 820].)

■ Nor may plaintiff recover on the theory of unjust enrichment. ■ As a general rule a party to a contract prohibited by law who is *in pari delicto* may not recover on principles of quasi contract for benefits allegedly conferred under the contract. (*Owens* v. *Haslett,* 98 Cal.App.2d 829, 833 [221 P.2d 252] ; *Fong* v. *Miller,* 105 Cal.App.2d 411, 413 [233

---

[3]The federal court relied upon section 5 of the Mission Indian Act of 1891 (26 Stat. 712).

P.2d 606]; *Takeuchi* v. *Schmuck,* 206 Cal. 782, 786 [276 P. 345]; Rest., Contracts, § 598, and com. c thereto. See *City Lincoln-Mercury Co.* v. *Lindsey,* 52 Cal.2d 267, 276 [339 P.2d 851]; *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570].) ▆ The purpose of the rule is not to effect justice between the parties but to protect the public interest by discouraging prohibited transactions. (*Owen* v. *Haslett, supra,* 833; *Fong* v. *Miller, supra,* 415.) ▆ Plaintiff cannot claim to be a party not *in pari delicto.* The record shows that it was well aware of the statutory restrictions on the power of an allottee to deal with his allotment. It therefore took a calculated risk that the agreement might be declared invalid. (*Heckman* v. *United States, supra,* 224 U.S. 413 [32 S.Ct. 424, 56 L.Ed. 820].) The facts of this case do not bring it within any of the exceptions to the general rule precluding recovery on principles of quasi contract.

Since the foregoing issues are dispositive of this appeal, it is unnecessary to consider other alleged errors urged by the appellant.

The judgment is affirmed.

Kerrigan, Acting P. J., concurred.