[Civ. No. 15234.  Second Dist., Div. Two.  May 1, 1946.]

PAUL A. PORTER, as Administrator, Office of Price Administration, Respondent, v. SYREL TAXEY FISKE, Appellant.

Helgoe & Hart and Robert E. Ford for Appellant.

Towson MacLaren, William U. Handy, Warren L. Shobert, Herbert H. Bent, Jacob Chaitkin and Cecil F. Poole for Respondent.

WILSON, J.—This case presents another of the many stratagems and subterfuges more or less ingeniously devised to evade the rent restrictions and regulations imposed by the Office of Price Administration. The complaint alleges that appellant owns a dwelling house in the Los Angeles Defense-Rental Area, the maximum legal rental of which was fixed in accordance with law by the Office of Price Administration at $40 per month; that in November, 1944, she leased the dwelling to tenants for six months at the maximum lawful rental, and at the same time demanded and received the additional sum of $210 from them. The tenants not having instituted an action on account of said overcharge within 30 days after said sum was paid, plaintiff brought this action by the authority of section 205(e) of the Emergency Price Control Act·(50 U.S.C.A. App. § 925(e)) to recover treble said amount and in addition sought an injunction restraining appellant from further violations of Rent Regulation for Housing. (9 Fed.

Reg. 11335.) By her answer appellant denied receiving any excess rental.

When the cause came on for trial appellant's counsel made an opening statement of the facts which he expected to prove. He stated that appellant had received said sum of $210 but denied that it was demanded or received as additional rental. He asserted that the property in question was vacant and was on the market for sale; that the tenants offered to pay appellant $210 if she would agree not to sell the property for six months and would give them a lease for said period; that said sum was paid before the lease was executed. He claimed that there were two separate transactions: (1) An agreement by the prospective tenants to pay said sum if appellant would agree not to sell for six months and would lease the property to them; and (2) the execution of the lease. In response to an inquiry by the court counsel for the appellant stated that his opening statement contained all facts expected to be proved in support of the defense to plaintiff's complaint. Respondent's motion for a judgment in his favor on said opening statement was granted. The court found that the facts alleged in the complaint were true; that the payment of said sum by the tenants, and the promise of appellant made in connection therewith, was a transaction separate from the execution of the lease, but that it was also true that said sum was demanded by appellant as a condition to the renting of the premises to them. Judgment was rendered in favor of plaintiff for the sum of $630 and appellant was permanently enjoined from demanding or receiving rents for said property in excess of the maximum legal rental and from otherwise violating said rent regulation.

1. *The decision of the court on counsel's opening statement.* There was nothing unique in the method adopted by the court in the trial of the case. Appellant's answer admitted all of the allegations of the complaint with one exception, to wit, she denied that the sum of $210 which she admitted having received was for the rental of the premises. Whether the payment of said amount was on account of rent or was a wholly separate and independent transaction was the only question presented to the court for determination. After a brief prefatory statement by one of respondent's attorneys, counsel for appellant made the statement hereinbefore outlined, followed by a colloquy between counsel and the court in which it was made certain that all facts relied on by appellant had been

fully stated. The introduction of evidence by her under oath would have added nothing to the statement. The facts were before the court for its consideration. Respondent's attorney accepted the statement in lieu of evidence and was satisfied to submit the case thereon. The court also accepted it, giving it the same effect as if all matters related therein had been under oath. The only complaint that can be urged by appellant is that the court reached a conclusion upon the facts different from that which had been urged by her counsel.

''. . . where it is clear that counsel has undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action or a defense'' the court is authorized to accept the statements of counsel and to render such judgment as is required thereby. (*Bias* v. *Reed,* 169 Cal. 33, 37 [145 P. 516].) The facts contained in the opening statement made on behalf of appellant, if proved, would not have authorized a judgment in her favor and it was therefore not error for the court to render judgment for plaintiff. (Id. p. 45.)

2. *The violation of the statute by appellant.* Section 2(b) of the Emergency Price Control Act (50 U.S.C.A. App. § 902(b)) authorizes the Price Administrator to stabilize rents for housing accommodations within defense-rental areas, and to establish such maximum rents for said accommodations as in his judgment will be generally fair and equitable and will effectuate the purposes of the act. Section (4) (50 U.S.C.A. App. § 904(a)) provides: ''It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to . . . demand or receive any rent for any defense-area housing accommodations . . . in violation of any regulation or order'' authorized by the statute.

Pursuant to the authority granted by the statute the Price Administrator adopted and promulgated Rent Regulation for Housing, covering various portions of the United States, including Los Angeles County. (9 Fed. Reg. 11335.) Section 2(a) thereof provides as follows: ''Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall demand or receive any rent for or in connection with the use or occupancy on and after the effective date of regulation of any housing accommodations within the Defense-Rental Area higher than the maxi-

mum. rents provided by this regulation . . ." Section 13(a) provides: "When used in this regulation the term: . . . (10) 'Rent' means the consideration, including any bonus, benefit, or gratuity, demanded or received for or in connection with the use or occupancy of housing accommodations or the transfer of a lease of such accommodations."

The terminology adopted by the parties in reaching their agreement did not operate to relieve appellant of the amercement provided by the statute. "Mere words and ingenuity of contractual expression, whatever their effect between the parties, cannot by description make permissible a course of conduct forbidden by law." (*United States* v. *San Francisco,* 310 U.S. 16, 28 [60 S.Ct. 749, 84 L.Ed. 1050].)

The question of the violation of a statute is not always determined with reference to the private rights of the parties to a transaction, and the result will not turn on the skill with which the parties have manipulated their transaction but on the significance of their acts in the terms of the provisions of the statute itself and of the public policy declared thereby. (*United States* v. *Masonite Corp.,* 316 U.S. 265, 280 [62 S.Ct. 1070, 86 L.Ed. 1461].)

Without the lease there was no consideration moving to the tenants for the sum paid by them in excess of the lawful rental. They would not have been benefited by and were not interested in the mere removal of the property from the market or by the refusal of appellant to sell for a period of six months. They wanted a lease and were willing to pay for it but common sense rejects the belief that they would have paid any amount whatsoever for appellant's naked promise not to sell.

The honesty and good faith of appellant are not in question. Though she may have been endowed with those attributes and believed that she had conceived a plan that was not in violation of the law or of the regulation, and though she may possibly have acted on what she deemed to be competent legal advice, she cannot escape the penalty for having received in violation of the regulation, a bonus or benefit as a part of the consideration for the lease.

Appellant does not question the validity or the reasonableness of the Rent Regulation adopted by the Administrator nor does she claim that the maximum rent established for her property was too low.

Schemes and devices of every character in evasion of the rent regulation have been condemned. The following are examples: Supplying equipment in an apartment in addition to what was supplied on the rental freeze date and charging an increased rental therefor (*Thierry* v. *Gilbert*, (C.C.A. 1) 147 F.2d 603, 604); the inclusion of appurtenant land in the lease of a house at a rental in excess of that previously received for the house alone, there being no apportionment of rent between house and land (*Scheide* v. *Porstmann*, (66 F.Supp. 483 [3 O.P.A. Opin. & Dec. 5079]); a requirement that prospective tenants purchase furniture as a condition of receiving a lease on an apartment (*Bowles* v. *Betts*, (Dist.Ct. E.D.Mo.) 2 O.P.A. Opin. & Dec. 5156); the operation of a club by a landlord wherein members paid a fee and were allowed to occupy apartments without the payment of rental, the club fees being in excess of the maximum legal rental (*Bowles* v. *Monks*, (Dist.Ct.Mass.) 2 O.P.A. Opin. & Dec. 5129); the exaction by the landlord's managing agent of a commission from tenants as a condition for their obtaining a lease on an apartment where it had been the custom prior to the maximum rent date established by the Office of Price Administration for the landlord to pay the commission. (*Cha-Kir Realty Corp.* v. *Sanchez*, 183 Misc. 427 [52 N.Y.S.2d 482, 484]; 2 O.P.A. Opin. & Dec. 5154.)

3. *The findings are supported by appellant's statement of facts.* ▉ The only inference to be drawn from the facts as stated is that the tenants paid the sum of $210 in addition to the lawful rental in order to obtain a lease and that appellant would not have leased the property to them save for said payment. The tenants did not pay and would not have paid said sum for the purpose of postponing the sale of the property but they paid for the privilege of occupying a dwelling for a period of six months. Nor would appellant have expected them to pay solely for a postponement of the sale. There was only one transaction, and not two, as asserted by appellant. The tenants offered to pay if the property were not sold *and* if they could obtain a lease.

4. *The injunction.* ▉ Appellant assigns as error that portion of the judgment enjoining her from directly or indirectly demanding or receiving rents for or in connection with the housing or occupancy of her said premises, or for or in connection with the use or occupancy of the premises here

involved or of any other housing properties owned or operated by her in excess of the maximum rents permitted by said Rent Regulation for Housing or from otherwise violating said Rent Regulation.

Section 205(e) of the statute (50 U.S.C.A.App. § 925(e)) provides among other things: "For the purpose of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity. . . ." Section 205(a) (50 U.S.C.A.App. § 925(a)) provides that whenever in the judgment of the Administrator any person has engaged in any acts or practices constituting a violation of any provision of section 4 of the act (the applicable portion is hereinbefore quoted) he may make application to the appropriate court for an order enjoining such acts or practices and a permanent or temporary injunction or restraining order shall be granted without bond. The injunction was authorized by statute and the violation of the act by appellant furnishes good and sufficient cause therefor.

It was not necessary for respondent to allege or prove the existence of the usual equitable grounds for the issuance of an injunction nor to allege a threatened repetition of the acts. "Where an injunction is authorized by statute it is enough that the statutory conditions are satisfied." (*Henderson* v. *Burd,* (C.C.A. 2) 133 F.2d 515, 517; *Bowles* v. *Swift & Co.,* 56 F.Supp. 679; *United States* v. *Adler's Creamery,* (C.C.A. 2) 110 F.2d 482, certiorari denied 311 U. S. 657 [61 S.Ct. 12, 85 L.Ed. 421].) We were at war when the transaction complained of occurred. The statute was adopted to meet an emergency occasioned by the scarcity of housing accommodations in areas where war supplies were being produced. The court will take judicial notice of the national emergency and of the creation thereby of an irreparable injury to the nation and to its people occasioned by a violation of the statute. (*Brown* v. *Kramer,* 49 F.Supp. 359, 363; *Brown* v. *Bernstein,* 49 F.Supp. 497, 498; *Bowles* v. *W. W. Elzea, Inc.,* 59 F.Supp. 1012, 1021.) Appellant cannot complain of an injunction restraining her from violating the law.

Judgment affirmed.

Moore, P. J., concurred. McComb, J., concurred in the judgment.